## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EDWARD RICHARDSON                                      )
393 Malvern Lakes Circle                              )
Apt. 101                                              )
Fredericksburg, Virginia 22406                        )      Case: 1:16-cv-00794          (F-Deck)
540/207-1666                                          )      Assigned To : Leon, Richard J.
                                                      )      Assign. Date : 4/28/2016
    Plaintiff,                     )      Description: Pro Se Gen. Civil    Jury Demand
                                                      )
    v.                             )      **Jury Trial Demanded**
                                                      )
BILLY J. SAULS, LEU Chief (Ret),                      )
14300 Delcastle Dr, Bowie, Maryland 20721,            )
ALBERT E. PLEASANT IV, Senior Special Agent,          )
9516 Fallson Court, Cincinnati, Ohio 45242,           )
LARENCE DUBLIN, LEU Lieutenant,                       )    **Date:** March 24, 2016
7500 Woodside Lane, #13, Lorton Virginia 22079        )
MARVIN JONES, LEU Deputy Chief                        )
8704 Francesca Dr., Clinton, Maryland 20735           )
KEVIN J. MAY, Employee Relations Specialist           )
325 P Street, SW, #1004, Washington, DC 20024         )
ROBERT E. BAKALE, Sergeant                            )
5906 Montgomery St., Woodlawn, Maryland 21207         )
TYSON L. COBLE, Administrative Lieutenant             )
3501 Stanton Ct., Graham, North Carolina 27253,       )
                                                      )
    Defendants.                    )

## COMPLAINT

The Plaintiff, individually, brings this action for monetary, injunctive, and declaratory

relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403*

*U.S. 388 (1971),* for violations of his 1st Amendment; 4th Amendment, and; 5th Amendment

Rights under the Constitution of United States of America.   Associated violations occurring

under the Privacy Act of 1974, 5 U.S.C. § 552a et seq.; the Rehabilitation Act of 1973; 12 U.S.C.

§ 1831j(c)(2), and; the Freedom of Information Act, 5 U.S.C. § 552 et seq.

RECEIVED

MAR 2 4 2016

Clerk, U.S. District and
Bankruptcy Courts

1

## Jurisdiction

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343, and; *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

## Venue

2.      Venue is proper in this district and division pursuant to 28 U.S.C.A § 1391(a)(b)(e), because the underlying acts and conduct violating applicable laws and constitutional rights occurred in this district; and/or each defendant conducts its/his/her affairs in, or is an inhabitant of, resides in, or has an agent in this district.

## Parties

3.      Plaintiff, Edward Richardson (hereinafter sometimes "Plaintiff" or "I") is a citizen of the United States and resides in the Commonwealth of Virginia who from June 8, 2009 to June 7, 2010 worked as law enforcement officer for the Board of Governors of the Federal Reserve System in its Law Enforcement Unit ("LEU") within the District of Columbia.

4.      Albert Pleasant IV (hereinafter sometimes "Pleasant"), a person of full age of majority, and at relevant times was, a Senior Special Agent within the Board's Office of the Inspector General ("OIG"). Albert Pleasant IV is herein sued in his individual-capacity pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

5.      Billy J. Sauls (hereinafter sometimes "Sauls"), a person of full age of majority, and at relevant times was, the Chief of the Board's LEU, and in my direct chain-of-command. Billy J. Sauls is herein sued in his individual capacity pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

2

6.     Marvin Jones (hereinafter sometimes "Jones"), a person of full age of majority, and at relevant times was, the Deputy Chief of LEU Operations, and in my direct chain-of-command. Marvin Jones is herein sued in his individual-capacity pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

7.     Tyson Coble (hereinafter sometimes "Coble"), a person of full age of majority, and at relevant times was, the Administrative Lieutenant of the Board's LEU. Tyson Coble is herein sued in his individual-capacity pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

8.     Robert Bakale (hereinafter sometimes "Bakale"), a person of full age of majority, and at relevant times, a Sergeant within the Board's LEU, and my direct supervisor. Robert Bakale is herein sued in his individual-capacity pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

9.     Larence Dublin (hereinafter sometimes "Dublin"), a person of full age of majority, and at relevant times, a Lieutenant within the Board's LEU, and in my direct chain-of-command. Larence Dublin is herein sued in his individual-capacity pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

10.     Kevin J. May (hereinafter sometimes "May"), a person of full age of majority, and at relevant times, an Employee Relations Specialist, tasked with decision making authority, within the Board's Management Division. Kevin May is herein sued in his individual-capacity pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

### District Of Columbia Statute Of Limitations For *Bivens* Actions

11.     The facts alleged herein occurred within the District of Columbia and *Bivens*
actions are filed pursuant to DC Code § 12-301(8) 3 year statute of limitations and the District of
Columbia ["Discovery Rule"].

12.     Plaintiff alleges that actions exhibited by the defendants' and presented herein are
"continuing violations" and are subject to the ["Discovery Rule"] of the District of Columbia and
DC Code § 12-301(8). Plaintiff's *Bivens* claims against the named defendants are timely.

### Facts

13.     The facts alleged herein are retaliatory "continuing violations" occurring between
November 2009 and January 2015 and are subject to the District of Columbia ["Discovery
Rule"].

14.     On June 8, 2009, Plaintiff was employed by the Board, to serve as a law
enforcement officer.

15.     Plaintiff was wrongfully terminated by the Board on, June 7, 2010, due to
intentional and willful misconduct of defendants' Coble, Bakale, May, Sauls, Dublin, and Jones.

16.     In or around October 2009, Plaintiff made a verbal request to defendant Bakale
for reasonable accommodation. Bakale informed Plaintiff he would relay the request to Dublin.
Plaintiff's request was to support his disability known to the defendants'.

17.     In or around November 2009, Plaintiff made a second verbal request to Bakale for
a reasonable accommodation. Plaintiff's requests went unacknowledged by defendants' Jones,
Dublin, Sauls, May, and Bakale.

18.     Plaintiff alleges, *inter alia*, that defendants' Bakale and Coble conspired with one
another in a retaliatory scheme to intentionally remove medical documents from his personnel

4

file to promote an adverse action against him for having made several reasonable accommodation requests.

19.     Plaintiff asserts that he had a right to privacy in his personnel file protected by the Privacy Act of 1974 and from unlawful searches and seizures under the 4th Amendment of the United States Constitution.

20.     Plaintiff's personnel file containing his medical documents was kept in what Coble called an "unlocked" file cabinet drawer inside of his office that all LEU sergeants had access to. Coble's testimony was only to shift blame.

21.     Dublin asserts that the medical documents were in a "locked" file cabinet drawer inside of Coble's office.

22.     Plaintiff asserts that locked or unlocked, the venue in which his medical documents were kept violated the 5 U.S.C. § 552a and the Rehabilitation Act of 1973.

23.     The Rehabilitation Acts requires that "employers keep all medical records and information confidential and in separate medical files."

24.     As a result of making several reasonable accommodation requests, Plaintiff was repetitively subjected to harsh name calling ("Sumo"), and an objectively hostile working environment while being forced to work 3 different shifts weekly by the defendants. Actions the defendants' have not denied.

25.     In or around November 2009, Bakale approached Plaintiff alleging that Plaintiff had failed to provide supporting medical documentation for several of his disability related calloffs that Plaintiff had in fact provided documentation for. These daily harassing accusations continued until Plaintiff's termination from Board employment on June 7, 2010.

26.     Plaintiff reported to defendants', Dublin and Jones, that he was being harassed by Bakale about missing medical documents he had previously provided. Plaintiff also informed Dublin and Jones that he believed the medical documents were being removed intentionally from his personnel file.

27.     Dublin and Jones both admit that Plaintiff informed them of the missing medical documents and that no action was taken.

28.     Unknown to Plaintiff at the time of his disclosure was that Dublin and Jones each had prior knowledge of the medical document removal and was directly involved.

29.     After Plaintiff's disclosure to Jones and Dublin, the harassment toward him grew more intense.

30.     Jones, in testimony clearly states that he took the word of Coble over Plaintiff because Plaintiff was only an officer and Coble was a lieutenant, and that there was no need to investigate the matter.

31.     On or around April 2010, Plaintiff discovered that Coble and Bakale were both involved in removing medical documents from his personnel file. Plaintiff was summoned into Coble's office and threatened with disciplinary action by both Bakale and Coble as a result of the missing medical documents.

32.     Coble and Bakale alleged that Plaintiff had 5 call-off dates with no supporting documentation. Plaintiff noticed that 2 of the alleged dates were pre-approved and he did not need supporting documentation.

33.     On May 12, 2010, Plaintiff was summoned to a meeting with defendant Sauls who informed him that he now had 15 calloffs without supporting medical documentation.

Plaintiff directly refuted this accusation and informed Sauls that his medical documents were being intentionally removed from his personnel file.

34.     Prior to entering Sauls' office, Plaintiff observed that Coble and LEU Assistant Chief, Charles O'Malley (hereinafter sometimes "O'Malley") were both in a meeting with Sauls. When Coble exited Sauls' office, Plaintiff observed his personnel file in Coble's possession as he could see his name written on the file folder.

35.     From April 2010 to May 12, 2010, the day Plaintiff met with Sauls, the defendants' had intentionally removed 10 additional medical documents from Plaintiff's personnel file to promote an adverse action against him.

36.     In or around May 2010, Plaintiff was summoned to a meeting with Bakale. Plaintiff advised Bakale that he would be contacting the media and the U.S. Dept. of Veteran Affairs with regard to the missing medical documents. Bakale replied to Plaintiff "why would you do that."

37.     On June 7, 2010, Plaintiff was terminated from Board employment with the accusation that he had not provided supporting medical documents for his disability related calloffs.

38.     Defendant Sauls, in his sworn EEOC affidavit, states that Plaintiff possessed 22 calloffs with no supporting documentation. This supports evidence that between May 12, 2010 and June 7, 2010, an additional 7 medical documents had been intentionally removed from Plaintiff's personnel file. Sauls' EEOC affidavit supported his direct involvement in the medical document removal.

39.     Plaintiff alerted defendant May, of the defendants' actions on May 14, 2010 and June 7, 2010 and no action was taken. Defendant May, a Board employee relations specialist had

a duty to investigate Plaintiff's complaint. Defendant May, in his June 26, 2012 deposition, disclosed his knowledge of Plaintiff's medical documentation removal.

40.    Defendants' Dublin, Jones, and Sauls each had a duty to investigate Plaintiff's missing medical documentation complaints.

41.    Sauls admitted to conferring with May after he and Plaintiff met on May 12, 2010; stating that it was decided that Plaintiff would be terminated from Board employment. This supports evidence that May was aware of the medical documentation removal prior to meeting with Plaintiff on May 14, 2010.

42.    Plaintiff contacted the Board's EEO office on June 4, 2010 with regard to the defendants' harassing misconduct and medical document removal. Plaintiff had scheduled a meeting with Board EEO Counselor, Andre Smith, for June 7, 2010, the day of Plaintiff's termination. It is Plaintiff's belief that Andre Smith notified the defendants' of the scheduled meeting.

43.    Immediately after Plaintiff's June 7, 2010 termination, he made several media related public disclosures to various agencies with regards to the defendants' misconduct, in which the defendants' had knowledge.

44.    It is with knowledge that the defendants' used Board vehicles to locate and destroy publicly available flyers not on Board property referencing the defendants' misconduct.

45.    Unknown to Plaintiff at the time was that he was subjected to additional retaliation by the defendants following his June 7, 2010 termination, violating his 1st Amendment rights under the United States Constitution.

46.    In June 2010 and July 2010, Plaintiff received threatening phone calls with what appeared to be the voice of an unidentifiable male and immediately reported each incident to the

Stafford County Sheriffs' Office. Plaintiff never accused anyone in particular because it was unknown who made the calls. Therefore, Plaintiff never accused anyone employed at the Board of any wrongdoing.

47.     Plaintiff discovered that O'Malley retrieved a copy of his initial June 2010 report from the Stafford County Sheriff's Office one day after the report was made by Plaintiff.

48.     Plaintiff never reported to the Board that he had received a threatening phone call or the fact that a report was made. Nor did the Stafford County Sheriff's Office contact the Board or any of its agents. O'Malley was aware of the report, however. Both threatening calls occurred subsequent to my termination from Board employment.

49.     On May 24, 2011 at approximately 10 o'clock am, Board OIG Senior Special Agent, Albert Pleasant IV; Stafford County Det. Chinault, and; Charles County Det. Higgs interviewed Plaintiff at his home about an alleged spoofing scandal that was alleged to have occurred at the Board.

50.     Defendant Pleasant stated "we know who made the threatening calls to you. It was Burford. She changed her voice to sound like [Coble]." Pleasant alleged that Burford was involved in a spoofing scandal.

51.     Board Senior Officer, Debora Burford, (hereinafter sometimes "Burford") was involved in protected activity when this allegation was made, as was Plaintiff.

52.     More importantly, Plaintiff never accused Coble or any other person at the Board of making threatening phone calls.

53.     A subsequent telephone conversation between Det. Chinault and Plaintiff concurred that something was botched with Pleasant's prior statements and investigation.

54.     On July 1, 2014, Plaintiff [discovered] that Pleasant had named him as a suspect in a falsified spoofing scandal. Pleasant used falsified information and a misrepresentation of facts to illegally retrieve Plaintiff's cellular records.

55.     Burford, who since December 2011 was under orders by the Board not to disclose this erroneous information, provided Plaintiff with Pleasant's falsified OIG report.

56.     Pleasant obtained Plaintiff's cellular records dating as far back as April 2010 up to January 2011, claiming that Burford and Plaintiff had spoken to one another approximately 900 times between that time. Pleasant obtained cellular records for months in which Plaintiff was employed at the Board.

57.     More importantly, Pleasant abused process and his authority by attempting to initiate a malicious prosecution against Plaintiff. Pleasant sought prosecutorial consideration against Plaintiff by providing falsified information to four different law enforcement agencies without Plaintiff's knowledge.

58.     In his OIG report, Pleasant states that on August 14, 2010, Plaintiff made a spoofing call from his home landline phone. Unknown to Pleasant was that Plaintiff did not possess a home landline telephone during the alleged period and on August 14, 2010 Plaintiff was in travels, far away from his residence.

59.     On May 24, 2011, the date when Pleasant interviewed Plaintiff at his home, he never informed Plaintiff that he was under any type of investigation, nor did Pleasant inform Plaintiff that he had obtained his cellular records.

60.     Pleasant and Sauls then unlawfully and tangibly disclosed Plaintiff's cellular records to various non law enforcement Board personnel, including Allison Dichoso, Dick Anderson, Keisha Hargo, and William Spaniel.

61.     Brought to Plaintiff's knowledge was that Sauls erroneously accused him of vandalizing vehicles belonging to Burford and Board Master Senior Officer, Serbrina Bullock (hereinafter sometimes "Bullock") in or around September 2010. Bullock had ongoing EEO activity, but not to Plaintiff's knowledge.

62.     It was reported that threatening letters referencing Bullock's and Burford's Board EEO activities were found at the scene of these vandalisms that the Board did not publicize. Both Burford and Bullock reside in Charles County, MD.

63.     Residing in Bowie, MD, Sauls arrived to the scene of Bullock's vandalism (at her Charles County, MD home) approximately 10 minutes following notification. When questioned by Bullock and Charles County law enforcement officials about his rapid response time, Sauls stated he was playing golf.

64.     Sauls lied to Bullock and Charles County law enforcement officials about his whereabouts, as he was not dressed in golfing attire at time of arrival. Plaintiff later discovered that the nearest golf course to Bullock's home would not result in such a rapid response time. Sauls was within immediate vicinity of Bullock's home when he received notification.

65.     Sauls stated to Bullock and Charles County law enforcement officials "Richardson did this because he's made at Marvin." Plaintiff had no knowledge of where Bullock lived, and absolutely no knowledge of Bullock's EEO activity. Plaintiff had been terminated from Board employment months prior to these incidents.

66.     It was Sauls' statements that resulted in Charles County Det. Higgs accompanying Pleasant to Plaintiff's home on May 24, 2011.

67.     Following the July 1, 2014 discovery, Plaintiff reported the actions of all defendants', as well as those relating to the intentional removal and destruction of his medical

documents to the Office of Special Counsel ["OSC"]. In return correspondence, Plaintiff was advised that the Federal Reserve Board is exempt from 28 U.S.C. § 2302 and therefore, the Whistleblower Protection Act ["WPA"]. Although not applicable, Plaintiff exhausted his administrative remedies with the OSC.

68.     Plaintiff notes that his whistleblower protections are covered under 12 U.S.C. § 1831j.

69.     In *Richardson v. Yellen, et al.*, defense counsels' did not deny Pleasant's behaviors and contended that Pleasant utilized 5 U.S.C. App. 3 § 6 (a)(4) to obtain Plaintiff's cellular records, which pertains to information obtained from federal agencies. Pleasant and Sauls directly violated the Electronic Communications Privacy Act ["ECPA"] and Plaintiff's clearly established rights protected under the 4th Amendment of the United States Constitution against unlawful searches and seizures.

70.     During the same timeframe Plaintiff made disclosure of the defendants' intentional misconduct to the OSC, he also made an additional disclosure to the Attorney Grievance Commission of Maryland, further reporting defendant May's behaviors.

71.     The defendants', including May, had prior knowledge of Plaintiff's disclosures to the OSC, as they were noted in Plaintiff's October 8, 2014 filing under *Richardson v. Federal Reserve Board, 14-1673*, amended March 20, 2015 to *Richardson v. Yellen, et al., 14-1673 (reflecting agency head as proper defendant)*.

72.     Plaintiff [discovered] on January 15, 2015, that defendant May, by choice, selected various confidential documents from Plaintiff's personnel file; removed those documents from Board property, and; converted them to his personal use by sending them to JaCina Stanton, Esq. of the Attorney Grievance Commission of Maryland on January 11, 2015.

73.    The wrongful disclosure included Plaintiff's termination and denial of termination appeal and was disclosed without his consent.

74.    Defendant May also disclosed to Ms. Stanton various protected documents within Plaintiff's active and ongoing EEO file.

75.    In *Richardson v. Yellen, et al*, defense counsels' did not deny May's actions and contended that the documents within Plaintiff's personnel and EEO files are "fair use" and that May had a right to access, remove, and make use of documents within Plaintiff's personnel file and ongoing EEO activity without Plaintiff's consent.

76.    Both files are protected by the Privacy Act of 1974 and the Fourth Amendment of the United States Constitution and Plaintiff has a reasonable expectation of privacy to the documents contained in both.

### Falsified Testimony

77.    The defendants' provided a high degree of contradicting discrepancy laden testimony that Plaintiff has a right to exploit to further fortify his claims.

78.    Plaintiff has a right to exhibit the defendants' testimony as the Court allows in the instant case.

### No Qualified Immunity Defense For Intentional Misconduct

79.    Courts have applied the "judgment versus choice" analysis in determining if an individual defendant's actions would qualify as a discretionary act.

80.    The defendants', and each of them, acted outside the scope of his employment and engaged in intentional and willful misconduct by personal choice.

81.    It was by personal choice of Bakale, Sauls, Coble, Jones, May, and Dublin to conspire with one another, to unlock and open the file cabinet drawer containing Plaintiff's personnel file; locating and removing the file bearing Plaintiff's name amongst over 100 other

personnel files; sifting through the contents of Plaintiff's personnel file, and; selecting, removing, and destroying 22 medical documents in Plaintiff's name, while knowing that doing so would result in an adverse action against Plaintiff.

82.   The aforementioned acts constitute a deliberate and illegal search and seizure violating Plaintiff's clearly established rights under the U.S. Constitution.

83.   It was by personal choice of Sauls and Pleasant to misrepresent facts to unlawfully obtain Plaintiff's cellular records; to search through those cellular records, and; to inappropriately disclose those records and their contents to Board personnel. The aforementioned acts constitute a deliberate and illegal search and seizure violating Plaintiff's clearly established rights under the U.S. Constitution.

84.   It was May's personal choice to search through Plaintiff's personnel and EEO files and to seize documents of his choice to make personal and unlawful disclosures.

85.   The actions of the defendants' is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

86.   The individual defendants' have no qualified immunity protection for willful and intentional misconduct.

### First Cause of Action
### (4th Amendment – Intentional Removal and Destruction of Medical Records)

87.   Plaintiff repeats and realleges the allegations of the complaint.

88.   Plaintiff alleges that the misconduct alleged under this cause of action are continuing violations.

89.   On 22 individual counts, defendants' Jones, Coble, Dublin, May, and Sauls conspired with one another to remove medical records from Plaintiff's personnel file that (1)

should not have been in the defendants possession, and; (2) contained documents protected under the Privacy Act of 1974, 5 U.S.C. § 552a, the Rehabilitation Act, and the 4th Amendment of the United States Constitution.

90.     The defendants' named under this cause of action violated the Privacy Act of 1974, the Freedom of Information Act, 5 U.S.C. § 552, and; Plaintiff's constitutionally protected rights under the 4th Amendment of the United States Constitution, resulting in an unlawful search and seizure on 22 individual counts. Plaintiff had a reasonable expectation of privacy in his personnel file and medical records.

91.     With evil motive, the defendants' named under this cause of action engaged in intentional and willful misconduct that all reasonable officials would have known at the time to be wrongful.

92.     The defendants', and each of them, named under this cause of action, knew or should have known that their actions were improper, unlawful and/or in violation of Plaintiff's 4th Amendment rights.

93.     The willful misconduct exhibited by the defendants' is not discretionary, but rather of choice. Laws were clearly established prior to the defendants' misconduct.

94.     Plaintiff has exhausted all required and available administrative remedies.

95.     As a result of the willful misconduct by the defendants' named under this cause of action, and for violating Plaintiff's clearly established 4th Amendment rights under the United States Constitution, Plaintiff has suffered adverse and harmful effects, including but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

96.     Plaintiff has a legal right under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)* to obtain the monetary, declarative, and injunctive relief he seeks.

**Second Cause of Action**
**(4th Amendment – Illegally Obtained Cellular Records)**

97.     Plaintiff repeats and realleges the allegations of the complaint.

98.     Plaintiff alleges that the misconduct alleged under this cause of action are continuing violations.

99.     By way of Plaintiff's July 1, 2014 discovery of evidence, defendants' Sauls and Pleasant unlawfully obtained Plaintiff's cellular records knowing the information used to obtain those records to be falsified and misrepresentation of facts. The defendants' name under this cause of action utilized 5 U.S.C. App. 3 § 6 (a)(4) which pertained to information obtained only from Federal agencies. Pleasant and Sauls illegally obtained Plaintiff's cellular records on to retaliate against Plaintiff's protected activity.

100.    With evil motive and intent, Pleasant and Sauls violated the ECPA; the Privacy Act of 1974; the Freedom of Information Act, 5 U.S.C. § 552, and; Plaintiff's clearly established rights under the 4th Amendment of the United States Constitution. Plaintiff had a reasonable expectation of privacy in his cellular records.

101.    The defendants' named under this cause of action engaged in intentional and callous misconduct that all reasonable officials would have known at the time to be wrongful.

102.    The defendants', and each of them, named under this cause of action, knew or should have known that their actions were improper, unlawful and/or in violation of Plaintiff's 4th Amendment rights.

103.    The misconduct exhibited by the defendants' is not discretionary, but rather of choice. Laws were clearly established prior to the defendants' misconduct.

104.    Plaintiff has exhausted all required and available administrative remedies.

105.    As a result of the willful misconduct by the defendants' named under this cause of action, and for violating Plaintiff's clearly established 4th Amendment rights under the United States Constitution, Plaintiff has suffered adverse and harmful effects, including but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

106.    Plaintiff has a legal right under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)* to obtain the monetary, declarative, and injunctive relief he seeks.

### Third Cause of Action
### (4th Amendment – Intentional Disclosure of Personnel and EEO Records)

107.    Plaintiff repeats and realleges the allegations of the complaint.

108.    Plaintiff alleges that the misconduct alleged under this cause of action are continuing violations.

109.    By way of Plaintiff's January 15, 2015 discovery of evidence, defendant May unlawfully searched Plaintiff's personnel file retrieving only documents that would be most character damaging to Plaintiff and converted personnel use. In addition, defendant May searched through Plaintiff's ongoing EEO activity file, removing specific documents, including his own EEO affidavit and converted those documents to his personal use.

110.    Defendant May removed those documents from Board property, mailing them to JaCina Stanton, Esq. from his residence. May violated various Board policies the Privacy Act of 1974, the Freedom of Information Act, 5 U.S.C. § 552, and; Plaintiff's clearly established rights

under the 4th Amendment of the United States Constitution. Plaintiff had a reasonable expectation of privacy in both his personnel and EEO files.

111.    With intentional malice, the defendant named under this cause of action engaged in willful misconduct that all reasonable officials would have known at the time to be wrongful.

112.    The defendant named under this cause of action, knew or should have known that his actions were improper, unlawful and/or in violation of Plaintiff's 4th Amendment rights.

113.    The misconduct exhibited by the defendant is not discretionary, but rather of choice. Laws were clearly established prior to the defendant's misconduct.

114.    Plaintiff has exhausted all required and available administrative remedies.

115.    As a result of the willful misconduct by the defendant named under this cause of action, and for violating Plaintiff's clearly established 4th Amendment rights under the United States Constitution, Plaintiff has suffered adverse and harmful effects, including but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

116.    Plaintiff has a legal right under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)* to obtain the monetary, declarative, and injunctive relief he seeks.

### Fourth Cause of Action
### (5th Amendment "Due Process" – June 7, 2010 Wrongful Termination)

117.    Plaintiff repeats and realleges the allegations of the complaint.

118.    Plaintiff alleges that the misconduct alleged under this cause of action are continuing violations.

119.    By intentionally and callously removing 22 medical documents from Plaintiff's personnel file, knowing that it would cause an adverse action against him, defendants' Sauls,

Bakale, Coble, May, Jones, and Dublin did so violating Plaintiff's clearly established due process rights under the 5th Amendment of the United States Constitution. Plaintiff was discharged from the Board for actions known to the defendants' named under this cause of action to be false.

120.   Plaintiff's asserts that his termination appeal was also corrupted. In Plaintiff's denial letter from Ombudsman Margaret Shanks, she states "you were not terminated for calloffs in which you provided documentation for, but for tardies." Plaintiff was clearly told by defendant May that he was being terminated for calloffs with no supporting documentation. No documentation as of this filing has ever been presented to Plaintiff alleging tardy dates.

121.   The evidence is clear. Jones clearly states in his deposition that he took Coble's word that Plaintiff failed to provide the documentation. Bakale also fabricates testimony that Plaintiff never turned in medical documentation. Bakale, Coble, and Jones are directly refuted by the testimony of Frank Williams who states that Plaintiff turned in too many medical documents to count. Sauls further alleges 7 additional calloffs without supporting documentation following Plaintiff's June 7, 2010 termination.

122.   Plaintiff requested that Bakale sign the last medical document he submitted to the Board, which is dated June 4, 2010. This document was included in the EEOC R.O.I., and provided to the EEO investigator by the Board. Even with the presence of this document, the defendants' listed Plaintiff's June 4, 2010 disability related calloff as unexcused.

123.   This document was given to Bakale upon Plaintiff's June 7, 2010 return to work, the day of Plaintiff's termination. Defendant Bakale makes an assertion that Plaintiff must have provided the document after Plaintiff's termination.

124.    The defendants' named under this cause of action engaged in intentional and willful misconduct with evil intent. All reasonable officials would have known the defendants' behaviors to be wrongful.

125.    The defendants', and each of them named under this cause of action, knew or should have known that their actions were improper, unlawful and/or in violation of Plaintiff's 5th Amendment rights.

126.    The misconduct exhibited by the defendants' is not discretionary, but rather of choice. Laws were clearly established prior to the defendants' misconduct.

127.    Plaintiff has exhausted all required and available administrative remedies.

128.    As a result of the willful misconduct by the defendants' named under this cause of action, and for violating Plaintiff's clearly established 5th Amendment right to due process under the United States Constitution, Plaintiff has suffered adverse and harmful effects, including but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

129.    Plaintiff has a legal right under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)* to obtain the monetary, declarative, and injunctive relief he seeks.

### Fifth Cause of Action
### (5th Amendment "Due Process"–Illegally Obtained Cellular Records)

130.    Plaintiff repeats and realleges the allegations of the complaint.

131.    Plaintiff alleges that the misconduct alleged under this cause of action are continuing violations.

132.    Plaintiff was falsely and intentionally accused by defendants' Pleasant and Sauls of crimes the Plaintiff in fact did not commit and had no apparent knowledge of the allegations against him.

133.    By way of Plaintiff's July 1, 2014 discovery of evidence, defendants' Sauls and Pleasant unlawfully obtained Plaintiff's cellular records knowing the information used to obtain those records to be falsified misrepresentation of facts. Acting under color of law, Pleasant and Sauls utilized 5 U.S.C. App. 3 § 6 (a)(4) which pertained to information obtained only from Federal agencies. Plaintiff had a reasonable expectation of privacy in his cellular records.

134.    Pleasant and Sauls willfully released Plaintiff's cellular records to Allison Dichoso, Keisha Hargo, Charles O'Malley, Dick Anderson, and William Spaniel.

135.    The defendants' name under this cause of action wrongfully and callously sought to have Plaintiff prosecuted by the U.S. Attorney's Office for the District of Maryland, Southern Division; the U.S. Attorney's Office for the District of Columbia; the Commonwealth Attorney of Stafford County, and; the Office of the Attorney General, District of Columbia, without Plaintiff's knowledge.

136.    Nor was Plaintiff advised that he was a subject in the defendants' investigation. Burford was intentionally placed under orders not to release this information to Plaintiff. Therefore, Plaintiff could not have known that his 5th Amendment rights to due process had been violated.

137.    Pleasant and Sauls violated the ECPA; the Privacy Act of 1974; the Freedom of Information Act, 5 U.S.C. § 552, and; Plaintiff's clearly established due process rights under the 5th Amendment of the United States Constitution.

138.    The defendants' named under this cause of action engaged in malicious and willful misconduct that all reasonable officials would have known at the time to be wrongful. The misconduct exhibited by the defendants' is not discretionary, but rather of choice. Plaintiff had engaged in no criminal wrongdoing against any person or agency, and the defendants' were aware of this. Laws were clearly established prior to the defendants' misconduct.

139.    Plaintiff has exhausted all required and available administrative remedies.

140.    As a result of the willful misconduct by the defendants' named under this cause of action, and for violating Plaintiff's clearly established 5th Amendment right to due process under the United States Constitution, Plaintiff has suffered adverse and harmful effects, including but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

141.    Plaintiff has a legal right under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)* to obtain the monetary, declarative, and injunctive relief he seeks.

## Sixth Cause of Action
### (5th Amendment "Due Process" - Illegal Disclosure of Protected Files)

142.    Plaintiff repeats and realleges the allegations of the complaint.

143.    Plaintiff alleges that the misconduct alleged under this cause of action are continuing violations.

144.    By way of Plaintiff's January 15, 2015 "discovery" of evidence. Defendant May was not aware that Plaintiff would be made aware of his intentional misconduct by the Attorney Grievance Commission of Maryland. If Plaintiff had not been given notification of the disclosures, he would not have known that defendant May had violated his constitutional right to due process under the 5th Amendment under the United States Constitution.

145.    Defendant May did not have to provide the Attorney Grievance Commission of Maryland with documents from Plaintiff's personnel and ongoing EEO files. This information was never requested by JaCina Stanton, Esq., nor was Plaintiff under investigation by the Attorney Grievance Commission of Maryland. It was defendant May who was under investigation.

146.    Defendant May removed those documents from Board property, mailing them to Ms. Stanton from his residence. May violated various Board policies, including the Board's Statement of Responsibility for Handling Personally Identifiable Information; the Privacy Act of 1974, 5 U.S.C. § 552a; the Freedom of Information Act, 5 U.S.C. § 552, and; Plaintiff's clearly established rights under the 5th Amendment of the United States Constitution.

147.    Defendant May abused his power and authority by entering into Plaintiff's personnel and EEO files. May had to search through Plaintiff's personnel file to retrieve those documents most character damaging to Plaintiff.

148.    The defendant named under this cause of action engaged in intentional and willful misconduct that all reasonable officials would have known at the time to be wrongful. The misconduct exhibited by the defendant is not discretionary, but rather of choice. Laws were clearly established prior to the defendant's misconduct.

149.    Plaintiff has exhausted all required and available administrative remedies.

150.    As a result of the willful misconduct by the defendant named under this cause of action, and for violating Plaintiff's clearly established 5th Amendment right to due process under the United States Constitution, Plaintiff has suffered adverse and harmful effects, including but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

151.    Plaintiff has a legal right under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)* to obtain the monetary, declarative, and injunctive relief he seeks.

**Seventh Cause of Action**
**(1st Amendment – Retaliation for Engaging in Protected Speech, Pre-Termination)**

152.    Plaintiff repeats and realleges the allegations of the complaint.

153.    Plaintiff alleges that the misconduct alleged under this cause of action are continuing violations.

154.    Plaintiff clearly felt that the removal of his medical documents was a privacy violation and a matter of public concern prior to his June 7, 2010 termination. In a harassing meeting with defendant Bakale (subsequent to the April 2010 meeting with Bakale and Coble), Plaintiff had informed Bakale that he would be taking the illegal removal of medical documents public and to the U.S. Dept. of Veterans Affairs.

155.    Plaintiff asserts that Bakale responded "why would you do that." Plaintiff was terminated shortly thereafter, violating Plaintiff's 1st Amendment right to free speech. Bakale informed the named co-defendants' under this cause of action of Plaintiff's intent to publicly disclose his and Coble's misconduct.

156.    It is proven that Bakale, Dublin, Jones, May, Sauls, and Coble conspired with one another to remove 22 medical documents from Plaintiff's personnel file. The defendants' also retaliated against Plaintiff after he made notification to Jones, Sauls, Dublin, and May, all of whom Plaintiff was unaware were actually involved in the conspiracy to promote an adverse action against him. The defendants' violated 12 U.S.C. § 1831j.

157.    The defendants' named under this cause of action engaged in intentional and willful misconduct that all reasonable officials would have known at the time to be wrongful.

The misconduct exhibited by the defendants' is not discretionary, but rather of choice. Laws were clearly established prior to the defendants' misconduct.

158.    Plaintiff has exhausted all required and available administrative remedies.

159.    As a result of the willful misconduct by the defendants' named under this cause of action, and for violating Plaintiff's clearly established 1st Amendment right to free speech under the United States Constitution, Plaintiff has suffered adverse and harmful effects, including but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

160.    Plaintiff has a legal right under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)* to obtain the monetary, declarative, and injunctive relief he seeks.

### Eighth Cause of Action
### (1st Amendment-Retaliation for Engaging in Protected Speech, Post Termination)

161.    Plaintiff repeats and realleges the allegations of the complaint.

162.    Plaintiff alleges that the misconduct alleged under this cause of action are continuing violations.

163.    Defendants' Sauls and Pleasant were aware that Plaintiff had begun making public disclosures regarding Plaintiff's missing medical documents as the matter was of public concern.

164.    The posited facts support why Sauls and Pleasant aggressively attempted to establish a falsified investigation against Plaintiff and further attempt have Plaintiff wrongfully prosecuted by 4 separate law enforcement agencies, all without Plaintiff's knowledge.

165.    This is also why Burford was ordered and threatened by defendants' under this cause of action, including defendant May, not to disclose information within Pleasant's OIG report.

166.    In contrast, Pleasant investigated Board LEU Senior Law Enforcement Officer, Shawn Waye (hereinafter sometimes "Waye"), who had used the Board's credit card at an out of town casino charging approximately $37,000 in debt. Waye was not authorized to engage in this unlawful activity. Pleasant observed Waye's actions on casino surveillance.

167.    Waye violated 18 U.S.C. § 656 and various state laws. Waye was given a brief suspension then allowed to return to full Federal law enforcement officer duties at the Board without penalty of demotion. Pleasant took no action criminal action against Waye.

168.    Waye was not engaged in protected activity, nor did he make a public disclosure against the Board or any of its officers as Plaintiff had.

169.    The defendants' named under this cause of action engaged in intentional and willful misconduct that all reasonable officials would have known at the time to be wrongful. The misconduct exhibited by the defendants' is not discretionary, but rather of choice. Laws were clearly established prior to the defendants' misconduct.

170.    Plaintiff has exhausted all required and available administrative remedies.

171.    As a result of the willful misconduct by the defendants' named under this cause of action, and for violating Plaintiff's clearly established 1st Amendment right to free speech under the United States Constitution, Plaintiff has suffered adverse and harmful effects, including but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present and future financial opportunities.

172.    Plaintiff has a legal right under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)* to obtain the monetary, declarative, and injunctive relief he seeks.

### No Special Factors Counseling Hesitation

173.    Plaintiff asserts that there are no special factors that counsel hesitation with regards to the remedies sought against any of the named defendants' in the instant case.

### *Richardson v. Yellen, et al.*, 14-1673

174.    Plaintiff's *Bivens* claims were dismissed from *Richardson v. Yellen, et al., 14-1673,* for failure to state a claim; the fact that the Agency head is the only proper defendant in a Title VII case, and for what was thought to be untimely.

175.    Plaintiff never asserted *Bivens* under jurisdictional authority in the aforementioned case. Under the District of Columbia discovery rule, Plaintiff's Bivens claims are subject to tolling.

176.    It wasn't until June 2014 that Plaintiff learned of Sauls' detailed involvement in the removal of his medical documents. It wasn't until July 1, 2014 that Plaintiff learned that Pleasant and Sauls obtained his cellular records and the attempts to have him prosecuted. It wasn't until January 15, 2015 that Plaintiff learned of May's disclosures to the Attorney Grievance Commission of Maryland. All retaliatory actions exhibited by the defendants' toward Plaintiff are continuing violations.

### Punitive Damages

177.    Plaintiff alleges that the above described acts of defendants depriving him of his constitutionally protected rights, privileges and immunities were done with evil motive and intent, and with reckless and callous indifference to my rights.

178.    Accordingly, Plaintiff seeks an award of punitive damages against each defendant in an amount according to proof.

### Demand for Jury Trial

179.    Based on the posited facts and the malicious and atrocious actions of the defendants' herein that brought these facts into existence, Plaintiff hereby demands trial by jury.

### Prayer for Relief

WHEREFORE, Plaintiff Edward Richardson requests that the Court award him the following relief:

1.  For compensatory damages; In an amount according to proof.

2.  For punitive damages;

3.  For attorneys' fees in accordance with any and all statutes and laws, including without limitation those attorneys' fees pursuant to 42 U.S.C § 1988;

4.  For a declaration that defendants' conduct deprived me of my rights, privileges, and immunities secured by the Constitution of the United States;

5.  For an injunction, prohibiting in the future defendants' illegal acts and misconduct complained of herein;

6.  For costs incurred herein; and

7.  For other and further relief as this court deem just and proper.


Date:    March 24, 2016                          Respectfully Submitted,

                                                 /s/
                                                 Edward Richardson, Plaintiff

                                                 393 Malvern Lakes Circle
                                                 Apt. 101
                                                 Fredericksburg, Virginia 22406
                                                 P. 540/207-1666
                                                 E. edwardrichardson27@yahoo.com