# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**EDWARD RICHARDSON,**                                   )
                                                        )
**Plaintiff,**                                          )
                                                        )
**v.**                                                  )        **Civil Action No. 16-794 (RMC)**
                                                        )
**BILLY J. SAULS,** *et al.,*                           )
                                                        )
**Defendants.**                                         )
_____ )

## MEMORANDUM OPINION

Edward Richardson, a former employee of the Board of Governors of the Federal

Reserve System, sues eleven current and former Board employees pursuant to *Bivens v. Six*

*Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), under which

plaintiffs may allege constitutional torts directly against individual federal employees.  Mr.

Richardson claims that Defendants violated his constitutional rights by taking various improper

actions related to his job, personnel records, and complaints of discrimination, leading to his

termination and undermining his subsequent attempts to challenge that termination.  Defendants

move to dismiss on the grounds that the claims have already been litigated or are barred by

Defendants' qualified immunity, among other arguments.  Because Counts One through Eight in

Mr. Richardson's Amended Complaint have been litigated fully in a related case, they are barred

by the principles of *res judicata* and collateral estoppel and will be dismissed.  Counts Nine and

Ten will be dismissed because they are untimely.  Count Eleven will be dismissed for failure to

state a claim upon which relief may be granted.  As a result, the Amended Complaint will be

dismissed in its entirety.

# I.    BACKGROUND

## A.  Amended Complaint in this Action

Because the facts of this case have been summarized repeatedly in this and related actions, *see Richardson v. Yellen*, 167 F. Supp. 3d 105 (D.D.C. 2016) (*Richardson I*); *Richardson v. Board of Govs. of the Fed. Res. Sys.*, 248 F. Supp. 3d 91 (D.D.C. 2017) (*Richardson II*), the Court provides only a brief summary.

Mr. Richardson worked as a conditional employee for the Board of Governors of the Federal Reserve System (the Board) in its Law Enforcement Unit (LEU) from June 8, 2009 to June 7, 2010, when his employment was terminated.  Am. Compl. for Damages (Am. Compl.) [Dkt. 21] ¶¶ 3, 21-22.  He is an African-American male and a former military police officer who served in Iraq in 2003.  Mr. Richardson previously alleged that his termination was illegal, stemming from race-based and disability discrimination, *see generally Richardson I*, 167 F. Supp. 3d 105, but those allegations are not the basis of the instant Complaint.  Here Mr. Richardson alleges numerous violations of his constitutional rights by some or all of the eleven Defendants.  As listed in the Complaint, Defendants are Billy Sauls, retired LEU chief; Albert Pleasant, senior special agent within the Board's Office of the Inspector General (OIG); Larence Dublin, LEU lieutenant; Marvin Jones, LEU deputy chief of operations; Kevin May, Human Resources specialist; Robert Bakale, LEU sergeant and Mr. Richardson's direct supervisor; Tyson Coble, LEU administrative lieutenant; Charles O'Malley, retired LEU assistant chief; Margaret Shanks, Board ombudsman; Keisha Hargo, senior employee relations specialist in HR; and Andre Smith, an Equal Employment Opportunity (EEO) specialist for the Board.  *See* Am. Compl. ¶¶ 4-14.

Mr. Richardson brings eleven counts by which he alleges constitutional torts stemming from discriminatory harassment, improper tampering with documents and personnel records, lying about his termination, and undermining his administrative complaints, among other trespasses. Count One charges that Defendants Jones, Coble, Dublin, May, Sauls, Bakale, and O'Malley violated Mr. Richardson's Fourth Amendment rights when they allegedly "conspired with one another to remove protected medical records from Plaintiff's personnel file that . . . should not have been in the defendants['] possession." *Id.* ¶ 168.

Counts Two and Five allege violations of Mr. Richardson's rights under the Fourth and Fifth Amendments, respectively, based on the claim that Messrs. Sauls and Pleasant illegally obtained Mr. Richardson's cell phone records "knowing the information used to obtain those records to be falsified and [a] misrepresentation of facts," and that they "willfully released" his phone records to other people. *Id.* ¶¶ 83-84, 92, 178, 214-15.

Counts Three and Six allege that Mr. May violated the Fourth and Fifth Amendments, respectively, when he "searched Plaintiff's personnel file[,] retrieving only documents that would be most character damaging to Plaintiff," and "searched through Plaintiff's ongoing EEO activity file, removing specific documents, including his own EEO affidavit and converted those documents to his personal use" by improperly mailing them to JaCina Stanton of the Maryland Attorney Grievance Commission. *Id.* ¶¶ 188-89, 229-30.

Count Four alleges that Ms. Shanks and Messrs. Sauls, Bakale, Coble, Jones, Dublin, and O'Malley violated Mr. Richardson's Fifth Amendment rights and are liable for wrongful termination because they "intentionally and callously remov[ed] 22 medical documents" from Mr. Richardson's personnel file; the absence of these medical records

allegedly deprived Mr. Richardson of the ability to document his medical "call-offs" when requested; and his termination resulted.  *Id.* at 28-30.

Count Seven alleges that Messrs. Bakale, Dublin, Jones, May, Sauls, Coble, and O'Malley violated Mr. Richardson's First Amendment rights by retaliating against him due to his protected speech and, specifically, that Mr. Bakale "harass[ed]" Mr. Richardson when confronted about the alleged removal of medical documents and asked Mr. Richardson why he planned to "tak[e] the illegal removal of medical documents public and to the U.S. Dept. of Veterans Affairs."  *Id.* ¶¶ 238-240.

Count Eight alleges that Messrs. Sauls and Pleasant violated Mr. Richardson's First Amendment rights by retaliating against him for engaging in protected speech following his termination:  Mr. Richardson claims that Messrs. Sauls and Pleasant "attempted to establish a falsified investigation against Plaintiff and further attempt[ed] [to] have Plaintiff wrongfully prosecuted by 4 separate law enforcement agencies," in retaliation for Mr. Richardson's "public disclosures" concerning the removal of his medical documents.  *Id.* ¶¶ 247-49.  Also in Count Eight, Mr. Pleasant is alleged to have investigated another employee for wrongful behavior, who had not engaged in protected activities and who received a lesser discipline than Mr. Richardson.  *Id.* ¶¶ 250-52.

Count Nine alleges that Mses. Hargo and Shanks and Messrs. Jones, Sauls, O'Malley, Bakale, Dublin, Coble, and May violated Mr. Richardson's rights under the First and Fifth Amendments by conspiring to retaliate against him and to deny his appeal of his termination.  The crux of count's allegations is that Ms. Shanks's purported reason for upholding Mr. Richardson's termination—that he had accumulated too many "tardies"—was pretextual and a "malicious fabrication of evidence."  *Id.* ¶¶ 259-60.  Mr. Richardson contends that Mr. May

had informed him that he was being terminated for failing to provide supporting documentation for medical call-offs. *Id.* ¶ 262.

In Count Ten, Mr. Richardson complains of unequal treatment in violation of his Fifth Amendment due process rights. *See id.* ¶ 280. Count Ten alleges that Mses. Shanks and Hargo and Messrs. O'Malley, Jones, Sauls, Bakale, Dublin, Coble, and May failed to consider prior misconduct of two white employees, Rocco Christoff and Darren Harris, when terminating Mr. Richardson for comparable reasons in June 2010. *Id.* ¶¶ 273-78.

Finally, Count Eleven charges Mr. Smith, a senior EEO specialist with the Board, with violations of Mr. Richardson's rights under the First and Fifth Amendments for allegedly failing to provide EEO counseling when Mr. Richardson submitted an administrative complaint of discrimination in 2016, several years after his discharge. *Id.* ¶¶ 284-90. Specifically, Mr. Smith allegedly deprived Mr. Richardson of his "right to free speech" by denying him adequate investigation of his EEO claims and related counseling. *Id.* ¶¶ 286-87. Mr. Richardson also contends that Mr. Smith violated the Fifth Amendment by denying him the opportunity "to be heard and to bring his claims before an administrative judge or this Court." *Id.* ¶ 288. He asserts that Mr. Smith improperly forwarded new EEO charges filed by Mr. Richardson to Board senior counsel Joshua Chadwick and that Messrs. Smith and Chadwick together "prevented Plaintiff's newly filed claims from moving forward" in the EEO process. *Id.* ¶ 156. Mr. Richardson contends that Mr. Chadwick presented a "fabricated" EEO form to Mr. Richardson's EEO investigator, thus undermining his claim. *Id.* ¶ 162. He alleges that the failure to "conduct EEO counseling . . . and a limited inquiry into Plaintiff's new claims of discrimination" violated his constitutional rights to due process and free speech. *Id.* ¶ 157. Related to this claim, Defendants filed with the Court an exhibit, of which they ask the Court to take judicial notice, which is a

letter dated February 2, 2017, in which Mr. Smith informed Mr. Richardson that his complaint was dismissed in accord with EEO regulations. *See* Mot. to Dismiss, Ex. 1, 2/2/2017 Letter to Mr. Richardson (2017 Letter) [Dkt. 34-1] (citing 29 C.F.R. § 1614.107(a)(1), (3)); *see also* Am. Compl. ¶¶ 156-58, 284-89 (referencing the 2017 Letter).

The Board moved to dismiss. *See* Mot. to Dismiss (Mot.) [Dkt. 34]. Mr. Richardson opposed. Mem. in Opp'n to Mot. to Dismiss (Opp'n) [Dkt. 37]. Defendants replied. Reply to Opp'n to Mot. to Dismiss (Reply) [Dkt. 39]. The motion is ripe for review.

### B. *Richardson I*

Mr. Richardson sued the Board and Messrs. May, Sauls, Jones, Coble, Bakale, Dublin, and Pleasant in a previous, related case. *See Richardson I*, 167 F. Supp. 3d at 109-12. *Richardson I* concerned the Board's alleged failures to provide reasonable accommodation for Mr. Richardson's "severe persistent asthma/allergies" and subsequent harassment by Mr. Richardson's superiors and co-workers. *See id.* at 108-09. Among alleged constitutional violations, Mr. Richardson alleged that Mr. Pleasant "willingly and intentionally defamed [Mr. Richardson's] character to gain access to [his] cell phone records, by claiming that [Mr. Richardson] was involved in a spoofing scandal against the Board"; and "access[ed] [Mr. Richardson's] cell phone records with malicious intent" "in violation of the Fourth Amendment." First Am. Compl., *Richardson I* (*Richardson I* Am. Compl.) [No. 14-cv-1673 Dkt. 8] ¶¶ 230-31. Mr. Richardson also alleged that Mr. May knowingly removed from Mr. Richardson's personnel file a separation letter, the denial of an appeal, and an investigative affidavit, *id.* ¶¶ 235-36; and that Messrs. Bakale and Coble retaliated against Mr. Richardson by removing medical documents from his file so that he could be terminated before his probationary period was over. *Id.* ¶ 243. Further, he alleged that all seven *Richardson I* defendants "knowingly, willingly, and

with malicious disregard for established laws, falsified testimony under penalty of perjury, while knowingly defaming [Mr. Richardson's] character, with intentional malice, to support their cause that resulted in [his] termination." *Id.* ¶ 238. Mr. Richardson also alleged that after he disclosed certain protected activity to Messrs. Dublin, Jones, Sauls, and May, he was given undesirable work assignments, including being "forced to work 3 different shifts weekly" until he was terminated. *Id.* ¶ 243. The *Richardson I* complaint included allegations of denial of promotion, denial of accommodation, and derogatory name-calling. *Id.* ¶ 253.

The Board moved to dismiss the *Richardson I* complaint as to all claims except those brought under the Rehabilitation Act of 1973, 29 U.S.C. § 791. Among the claims dismissed were those alleged by Mr. Richardson as constitutional torts against individual defendants, which the Court evaluated as *Bivens* claims and determined were untimely. *See Richardson I*, 167 F. Supp. 3d at 115-16.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Id.* at 570. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Id.* at 555.

But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## III.    ANALYSIS

### A.  *Res Judicata* **and Collateral Estoppel**

Defendants argue that Counts One through Ten are barred under the doctrine of *res judicata* or the related doctrine of collateral estoppel, because the claims at issue in those counts have been litigated fully in *Richardson I*. For purposes of clarity when comparing *Richardson I* to the instant matter, this case will be referred to as *Richardson III*.

#### 1.  *Res Judicata*

"Under the doctrine of *res judicata*, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). The first element is satisfied "when the cases are based on the 'same nucleus of facts,' because 'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory on which a litigant relies.'" *Capitol Hill Group v. Pillsbury Winthrop Shaw Pittman, LLP*, 574 F. Supp. 2d 143, 149 (D.D.C. 2008) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)).

"*[R]es judicata* (claim preclusion) bars relitigation not only of matters determined in a previous litigation but also ones that a party could have raised." *Nat. Res. Defense Council*

*v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008) (quoting *NRDC v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988)); *accord Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").  In evaluating whether two cases share the same nucleus of facts, "the court will consider 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"  *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983)).

### a.  Prior Litigation Involving the Same Claim or Cause of Action

Mr. Richardson argues that *res judicata* does not foreclose the claims at issue because he did not, in *Richardson I*, "allege a *Bivens* claim," and that Defendants' arguments fail because "simply naming several of the current Defendants[] under a Title VII cause of action does not preclude Plaintiff from asserting his constitutional violation claims."  Opp'n at 4.  Mr. Richardson is incorrect to the extent that he believes *res judicata* does not foreclose new legal theories, not previously argued, arising from the same fact pattern (or patterns).  The question is whether "the facts surrounding the transaction or occurrence which operate to constitute the cause of action" have already been litigated—not whether the litigant relies on a different legal theory the second time around.  *Capitol Hill Group*, 574 F. Supp. 2d at 149; *see also Apotex*, 393 F.3d at 217-18 ("There are no new facts.  [Plaintiff] is simply raising a new legal theory.  This is precisely what is barred by *res judicata*.").  Mr. Richardson points to *Drake v. FAA*, 291 F.3d 59 (D.C. Cir. 2002), for the proposition that his claims should not be barred by the doctrine of *res judicata* because they are based on different legal authority (*i.e.*, constitutional claims as opposed

to Title VII claims). In fact, however, *Drake* held that claims "based on a different nucleus of facts than were those advanced" in an earlier action, and which had "not yet [been] in existence at the time of the original action," should not have been dismissed. *Drake*, 291 F.3d at 416.

Many of Mr. Richardson's allegations in the *Richardson III* Amended Complaint are derived from the same "nucleus of facts" presented in *Richardson I* and thus constitute an impermissible attempt to relitigate "the same claim or cause of action" that has been dismissed. *Smalls*, 471 F.3d at 192. Seven of the eleven defendants named in *Richardson III*—Billy Sauls, Albert Pleasant, Larence Dublin, Marvin Jones, Kevin May, Robert Bakale, and Tyson Coble— were also named in *Richardson I*. Moreover, Mr. Richardson's allegations concerning these Defendants in *Richardson III* overlap significantly with the factual allegations made in *Richardson I*. Count One in this action charges Defendants Jones, Coble, Dublin, May, Sauls, Bakale, and O'Malley with violating Mr. Richardson's Fourth Amendment rights for allegedly "remov[ing] protected medical records from Plaintiff's personnel file that . . . should not have been in the defendants['] possession." Am. Compl. ¶¶ 168, 171. Mr. Richardson made these same allegations in *Richardson I*. *See, e.g.*, *Richardson I* Am. Compl. ¶ 212; *see also id.* ¶¶ 26- 27 (Mr. Richardson allegedly observing Messrs. Sauls, Coble, and O'Malley with a folder that may have contained the medical documents); *id.* ¶¶ 235-38 (alleging that Mr. May and other defendants in *Richardson I* "intentionally and maliciously remov[ed] official medical documents from my LEU file"); *id.* ¶ 243 (alleging that Messrs. Bakale and Coble allegedly removed medical documents from Mr. Richardson's file, leading to his termination). The facts comprising Count One in *Richardson III* have already been litigated in *Richardson I*.

Counts Two and Five here allege violations of Mr. Richardson's Fourth and Fifth Amendment rights, respectively, based on the claim that Messrs. Sauls and Pleasant illegally

obtained Mr. Richardson's cell phone records "knowing the information used to obtain those records to be falsified and misrepresentation of facts," and that they "willfully released" the records to other people. Am. Compl. ¶¶ 83-84, 92, 178, 214-15. *Richardson I* alleged that Mr. Pleasant "unlawfully accessed Mr. Richardson's cell phone records by using Mr. Pleasant's investigation [into Mr. Richardson's background] as a pretext," and improperly "displayed" their contents. *Richardson I*, 167 F. Supp. 3d at 109, 114. The *Richardson III* Amended Complaint states that Mr. Richardson received discovery on July 1, 2014, which supports its claim against Messrs. Sauls and Pleasant vis-à-vis the telephone records. *See* Am. Compl. ¶¶ 178, 214. July 1, 2014 was almost nine months before Mr. Richardson filed an amended complaint in *Richardson I.* Thus, although *Richardson I* alleged wrongdoing concerning Mr. Richardson's phone only on Mr. Pleasant's part, the record is clear that Counts Two and Five in *Richardson III* "could have [been] raised" against Mr. Sauls. *See Nat. Res. Defense Council*, 513 F.3d at 261. The Court finds that the claim**s** in Counts Two and Five were or could have been litigated fully in *Richardson I.*

Counts Three and Six in the present action allege that Mr. May violated Mr. Richardson's rights under the Fourth and Fifth Amendments, respectively, when he "searched Plaintiff's personnel file[,] retrieving only documents that would be most character damaging to Plaintiff," and "searched through Plaintiff's ongoing EEO activity file, removing specific documents, including his own EEO affidavit and converted those documents to his personal use" by improperly mailing them to JaCina Stanton of the Maryland Attorney Grievance Commission. Am. Compl. ¶¶ 188-89, 229-30. Mr. Richardson made functionally identical allegations in *Richardson I*:

> Kevin May engaged in prohibited personnel practices by removing
> my Board separation letter, Board Separation appeal letter, and his

> EEO investigative affidavit, from my personnel file, and the [investigation report] from the Board's property, and unlawfully converting the documents to his personal use. . . . JaCina Stanton, Esq. of the Attorney Grievance Commission of Maryland mailed me the package containing May's statement and documents, as he mailed it to her, using his home address.

*Richardson I* Am. Compl. ¶¶ 51-53. Counts Three and Six have been litigated fully in *Richardson I.*

Count Four in *Richardson III* alleges that Ms. Shanks and Messrs. Sauls, Bakale, Coble, Jones, Dublin, and O'Malley are liable for wrongful termination in violation of Mr. Richardson's Fifth Amendment rights because they "intentionally and callously remov[ed] 22 medical documents" from Mr. Richardson's personnel file, so that he could not document his medical absences and was terminated. Am. Compl. at 28-30. As described above, *Richardson I* included the same allegations that Defendants improperly removed medical documents from Mr. Richardson's file. *See, e.g.*, *Richardson I* Am. Compl. ¶¶ 212, 235-38, 243. As here, in *Richardson I*, Mr. Richardson specifically linked the alleged removal of medical documents to his allegations that Defendants lied about the number of Mr. Richardson's "unexcused call-offs," or absences, and lied about whether he had submitted required medical documents. *Id.* ¶¶ 218, 221. The allegations in *Richardson III* are certainly part of the same "nucleus of facts" as in *Richardson I*: they "are related in time, space, origin" and alleged motivation, and they would form a "convenient trial unit" because of their interrelatedness. *Apotex*, 393 F.3d at 217. The alleged facts underlying Count Four in the present action either could have been or have already been litigated in *Richardson I.*

Count Seven alleges that Messrs. Bakale, Dublin, Jones, May, Sauls, Coble, and O'Malley retaliated against Mr. Richardson after he engaged in protected speech and thereby violated his First Amendment rights. The alleged retaliation involved comments relating to the

missing medical documents substantiating his absences.  Am. Compl. ¶¶ 238-240.  As discussed

above, that issue has been litigated fully.  *See Richardson I* Am. Compl. ¶¶ 212, 235-38, 243.

Further, *Richardson I* claimed "whistleblower retaliation" when Mr. Jones failed to investigate

the removal of medical documents, and Mr. Bakale harassed and threatened to terminate Mr.

Richardson after he reported the removal of the documents from the file.  *Id.* ¶ 245.  The similar

allegations in *Richardson III* are part of the same "nucleus of facts" and have already been

litigated in *Richardson I*.

Count Eight in this action alleges that Messrs. Sauls and Pleasant retaliated

against Mr. Richardson for his protected speech after his termination:  Mr. Richardson claims

that Messrs. Sauls and Pleasant "attempted to establish a falsified investigation against Plaintiff

and further attempt[ed] [to] have Plaintiff wrongfully prosecuted by 4 separate law enforcement

agencies," in retaliation for Mr. Richardson's "public disclosures" concerning the removal of his

medical documents from his personnel file.  Am. Compl. ¶¶ 247-49.  Additionally, Mr. Pleasant

is alleged to have investigated another employee, who had not engaged in protected activities,

but imposed a more lenient punishment than was imposed on Mr. Richardson.  *Id.* ¶¶ 250-52.

The same allegations have already been litigated in *Richardson I*.  *See, e.g.*, *Richardson I* Am.

Compl. ¶¶ 233 ("Pleasant, with no probable cause, presented falsified documentation to 4 law

enforcement agencies for prosecutorial consideration against me"), 238 ("Sauls and Pleasant

knowingly and willingly engaged in a conspiracy to defame my character to promote malicious

prosecution, evidenced in Pleasant's report.").  Mr. Richardson likewise raised the investigation

of the other employee as a comparator in *Richardson I*.  *See id.* ¶¶ 162-64 ("I allege that [the

other employee] had no prior EEO activity against the Board; therefore, Pleasant did not seek

prosecutorial consideration against [him] . . . as he attempted to do with . . . myself. . . . I also

allege that [the other employee], to my knowledge possessed no known recorded disabilities, had not previously requested a reasonable accommodation, and had no previous on-going EEO activity."). These facts have been litigated.

Count Nine in *Richardson III* alleges that Mses. Hargo and Shanks and Messrs. Jones, Sauls, O'Malley, Bakale, Dublin, Coble, and May conspired to retaliate against Mr. Richardson and to deny his 2010 termination appeal, in violation of his rights under the First and Fifth Amendments. The crux of Mr. Richardson's charge is that Ms. Shanks's purported reason for upholding Mr. Richardson's appeal of his termination, that he had accumulated too many "tardies," was pretextual and thus a "malicious fabrication of evidence." Am. Compl. ¶¶ 259-60. Mr. Richardson asserts that Mr. May informed him that he was being terminated for failing to provide supporting documentation for medical call-offs (*i.e.*, the documentation that had been allegedly improperly removed from his file). *Id.* ¶ 262. The complaint in *Richardson I* included allegations that Mr. Bakale stated that Mr. Richardson's "tardies" were a reason for switching Mr. Richardson to a different shift. *Richardson I* Am. Compl. ¶¶ 68, 69, 71, 80, 182. *Richardson I* also included allegations that Mr. Richardson's appeal was improperly denied. *Id.* ¶ 238. However, the distinct claim that Mr. Richardson was given a "fabricated" reason for the denial was not previously litigated in *Richardson I*. Count Nine will not be dismissed due to *res judicata.*

Count Ten in this action alleges that Mses. Shanks and Hargo and Messrs. O'Malley, Jones, Sauls, Bakale, Dublin, Coble, and May failed to consider prior misconduct of two white employees, Rocco Christoff and Darren Harris, when Mr. Richardson was terminated in June 2010 for reasons he believes to have been comparable. Am. Compl. ¶¶ 273-78. The allegations raised in Count Ten of *Richardson III* are distinct from allegations made in

14

*Richardson I*, in which Mr. Richardson alleged "disparate treatment" and claimed that he was "of a protected group and was treated less favorably . . . than all other LEU officers," but did not mention background investigations or evidence of misconduct in prior employment.  Notably, Messrs. Christoff and Harris are not mentioned in the *Richardson I* complaint.  *Richardson I* Am. Compl. ¶¶ 256-58.  Count Ten will not be dismissed on *res judicata* grounds.

### b.  Same Parties or Their Privies

Seven of the eleven defendants named in Mr. Richardson's Amended Complaint in *Richardson III*—Billy Sauls, Albert Pleasant, Larence Dublin, Marvin Jones, Kevin May, Robert Bakale, and Tyson Coble—were also named in *Richardson I*.  For those seven original defendants, the present action obviously involves the same parties.

### c.  Final Judgment on the Merits

The final requirement to find that a claim is barred by *res judicata* is that there must have been a final, valid judgment on the merits by a court of competent jurisdiction in the earlier litigated claim.  Neither party challenges that this is a court of competent jurisdiction.[1] The question on this element is whether the Court's decision in *Richardson I* is a final judgment on the merits.  It is established law in the D.C. Circuit that a court's dismissal for lack of jurisdiction is not a decision on the merits and therefore does not have *res judicata* effect.  *See Havens v. Mabus*, 759 F.3d 91, 98 (D.C. Cir. 2014).  In general, however, courts treat dismissal on statute-of-limitations grounds "the same way they treat a dismissal for failure to state a claim . . . : as a judgment on the merits."  *Havens*, 759 F.3d at 99 (quoting *Plaut v. Spendthrift*

---

[1] The Court finds that it has jurisdiction over Mr. Richardson's allegations of constitutional violations.  *See Bivens*, 403 U.S. 388 (holding that federal courts may hear plaintiffs' allegations of constitutional torts against individual federal employees).  The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  Venue is proper because the acts alleged in Mr. Richardson's complaint occurred in the District of Columbia.

*Farm, Inc.*, 514 U.S. 211, 228 (1995)); *see also Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) ("Statutes of limitations and other filing deadlines ordinarily are not jurisdictional.") (internal quotation marks and citation omitted).  Also relevant, Mr. Richardson now attempts to relitigate in the same Court, and his *Bivens* claims are subject to the same statute of limitations on which his *Bivens* claims in *Richardson I* were dismissed.  *See Richardson I*, 167 F. Supp. 3d at 115-16 (applying D.C. Code § 12-301 and dismissing Mr. Richardson's *Bivens* claims as time-barred); *see also Smalls v. United States*, 471 F.3d 186, 192-93 (D.C. Cir. 2006) (affirming dismissal on *res judicata* grounds where the same Administrative Procedure Act claim had been dismissed on statute-of-limitations grounds by another district court, and characterizing that dismissal as a judgment on the merits).  The Court's holding in *Richardson I* was a final, valid judgment on the merits for *res judicata* purposes.

Counts Two, Three, Five, Six, and Eight in the instant Complaint will be dismissed in full as barred by *res judicata*.[2]  Counts One and Seven will be dismissed on grounds of *res judicata* except as to Mr. O'Malley, and Count Four will also be dismissed except as to Mr. O'Malley and Ms. Shanks.  These defendants were added to this action when Mr. Richardson amended his complaint on February 9, 2017 and were not named in *Richardson I*. The claims against them in *Richardson III* will not be dismissed under the doctrine of *res judicata*.

---

[2] Mr. Richardson argues that *res judicata* may not be raised in a motion to dismiss.  *See* Opp'n at 9-10.  As defendants point out, this is not the case; the D.C. Circuit has affirmed not only granting summary judgment but also dismissing a complaint on res judicata grounds.  *See, e.g.*, *Sheptock v. Fenty*, 207 F.3d 326 (D.C. Cir. 2013); *Smalls*, 471 F.3d 186.

### 2. *Collateral Estoppel*

Defendants argue that collateral estoppel, or issue preclusion, applies to all of Mr. Richardson's claims against Mses. Shanks and Hargo and Mr. O'Malley, and all such claims should be dismissed. *See* Mot. at 8-9.[3] Those three new defendants are named in Counts Nine and Ten in the present action, but the Court finds that the doctrine of collateral estoppel does not bar those counts. However, the claims raised in Counts One, Four, and Seven were already litigated in *Richardson I* and the Court therefore addresses Defendants' collateral estoppel argument as to those counts vis-à-vis Mr. O'Malley and Ms. Shanks. Ms. Hargo is not named in Count One, Four, or Seven.

Collateral estoppel, or issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). A party is barred from relitigating an issue if (1) the same issue was "contested by the parties and submitted for judicial determination in the prior case"; (2) the issue was "actually and necessarily determined by a court of competent jurisdiction in that prior case"; and (3) "preclusion in the second case [does] not work a basic unfairness to the party bound by the first determination." *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 301 (D.C. Cir. 2015) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). As described above, Counts One, Four, and Seven all center on the alleged removal of medical documents from Mr. Richardson's personnel file, and his belief that

---

[3] Defendants incorrectly characterize their argument as one based upon the theory of "offensive collateral estoppel," under which a *defendant* may not relitigate identical issues already lost against another plaintiff. *See Jack Faucett Assocs., Inc. v. AT&T*, 744 F.2d 118, 126 (D.C. Cir. 1984). Here, of course, it is the plaintiff, Mr. Richardson, whose claim against new defendants would be precluded by a theory of collateral estoppel. Thus the operative theory is collateral estoppel and not offensive collateral estoppel.

his inability to produce those documents led to his termination. These issues were previously contested by the parties and their dismissal by the Court constituted a determination by a court of competent jurisdiction. *See generally Richardson I*, 167 F. Supp. 3d 105.

Issue preclusion here would not "work a basic unfairness" to Mr. Richardson. *Canonsburg Gen. Hosp.*, 807 F.3d at 301. Although *Richardson III* names new defendants and alleges their involvement in the claims at issue, Mr. Richardson fails to advance any new allegations that would materially change the facts or analysis on Count One, Four, or Seven. Indeed, the allegations concerning Mr. O'Malley's actions were covered at length in the *Richardson I* complaint, including as related to medical documents and call-offs.[4] Ms. Shanks was not mentioned by name in *Richardson I*, but Mr. Richardson raises no new facts concerning her involvement in the events at issue. Mr. Richardson claims that Ms. Shanks's letter denying Mr. Richardson's termination appeal provided a dishonest reason for the termination. Am. Compl. ¶ 199. However, because the central allegation in Count Four in *Richardson III* is based on the termination itself and the removal of medical documents from the file, that claim has been litigated. *See, e.g.*, *Richardson I*, 167 F. Supp. 3d at 111 (discussing Mr. Richardson's allegations that he was terminated in part as a result of the improper removal of medical documents from his file).[5]

---

[4] In at least one instance, the *Richardson I* complaint explicitly grouped Mr. O'Malley with the defendants named in that case. *See Richardson I* Am. Compl. ¶ 186 ("[T]here is no evidence that any Defendant, including O'Malley, made any effort to ascertain the legitimacy of my disability condition . . . all while harassing me for call-offs that I had provided medical documentation for.").

[5] Separately, in Count Nine, Mr. Richardson raises allegations about this alleged fabrication of a reason for his termination, which the Court has found to be distinct from the issues litigated in *Richardson I*.

Counts One, Four, and Seven will be dismissed in full on *res judicata* and collateral estoppel grounds.

## B. Timeliness of Claims Under *Bivens*

Counts Nine and Ten remain. Each is a claim under *Bivens* and Defendants argue that they are all untimely. "When a federal action contains no statute of limitations, courts will ordinarily look to analogous provisions in state law as a source of a federal limitations period." *Hampton v. Comey*, No. 14-cv-1607, 2016 WL 471277, at \*13 (D.D.C. Feb. 8, 2016) (quoting *Doe v. DOJ*, 753 F.2d 1092, 1114 (D.C. Cir. 1985)); *see also Richardson I*, 167 F. Supp. 3d at 115 (construing Mr. Richardson's arguments as *Bivens* claims and applying the statute of limitations from D.C. Code § 12-301). In the context of a *Bivens* action claiming the deprivation of constitutional rights, the D.C. Circuit has instructed that D.C. Code § 12-301 provides the relevant limitations period. *See Zhao v. Unknown Agent of CIA*, 411 F. App'x 336, 336-37 (D.C. Cir. 2010) (finding *Bivens* claims "barred by the applicable statute of limitations" and citing D.C. Code § 12-301); *see also Doe*, 753 F.2d at 1114-15 (applying one-year statute of limitations for defamation actions set out in D.C. Code § 12-301(4) to *Bivens* claim based on allegations of dissemination of false and defamatory statements). D.C. Code § 12-301(8) provides a three-year limitations period for actions "for which a limitation is not otherwise specially prescribed." Three years is therefore the longest period that could apply to Mr. Richardson's *Bivens* claims.

Mr. Richardson's amended complaint in *Richardson I*, in which he named some (but not all) of the individual defendants in this action, was filed on March 20, 2015. Thus the date of the alleged constitutional violations at issue in *Richardson I* must have been, at the earliest, March 20, 2012. Count Nine in this matter alleges that Ms. Shanks gave Mr. Richardson a "fabricated" reason for his termination on June 7, 2010, Am. Compl. ¶ 262, and

Count Ten alleges, also in 2010, that Defendants improperly considered allegations of prior misconduct in deciding to terminate Mr. Richardson. *Id.* ¶ 273-77. These alleged acts occurred well before the three-year limitations period that applied in *Richardson I*, and were even further beyond the limitations period when Mses. Hargo and Shanks and Mr. O'Malley were named as defendants in the present action.

Mr. Richardson contends that the statute of limitations for his *Bivens* claims should be tolled because "much of the constitutional trespass violations were not to Plaintiff's knowledge" earlier. Opp'n at 10-11. However, Mr. Richardson alleges that he learned some elements of the violations alleged in Counts Nine and Ten during contemporaneous meetings he attended with Defendants. *See* Am. Compl. ¶¶ 262, 277. Moreover, Mr. Richardson fails to specify the date on which he asserts he learned the necessary facts or what period of time should be tolled. In the absence of admissible evidence, the Court cannot accept Mr. Richardson's broad and conclusory statement that he only learned of relevant details after the statute of limitations had passed. Counts Nine and Ten will be dismissed as time-barred.

### C. Qualified Immunity (Count Eleven)

Defendants urge the Court to dismiss Count Eleven because Mr. Smith, the only defendant named therein, is protected by qualified immunity due to Mr. Richardson's failure to allege, with supporting facts, any violation of a clearly established constitutional right.

Count Eleven alleges that Mr. Smith, a senior EEO specialist with the Board, violated Mr. Richardson's rights under the First and Fifth Amendments by failing to provide EEO counseling in response to an administrative complaint of discrimination Mr. Richardson submitted after his termination. Am. Compl. ¶¶ 284-90. Mr. Richardson asserts that in November 2016 he became aware of new information supporting a claim of race-based

discrimination, and in December 2016 he contacted Mr. Smith about the new EEO complaint he

wished to file. *See id.* ¶¶ 142-43. Mr. Richardson further asserts that Mr. Smith failed to provide

EEO counseling and otherwise mishandled this new EEO complaint. *Id.* ¶¶ 144-47. Based on

these alleged failures, Mr. Richardson argues here that Mr. Smith deprived him of his "right to

free speech" by denying him an adequate investigation of his EEO claims and related counseling,

and that Mr. Smith violated the Fifth Amendment by denying Mr. Richardson the opportunity "to

be heard and to bring his claims before an administrative judge or this Court." *Id.* ¶¶ 286-88.

      Mr. Richardson also alleges that Mr. Smith "collu[ded]" with another Board

employee, senior counsel Joshua P. Chadwick, to prevent newly alleged discrimination claims

from progressing administratively. Opp'n at 14-15. Mr. Richardson asserts that Mr. Smith

forwarded the new EEO claim to Mr. Chadwick, and that Mr. Smith and Mr. Chadwick together

"prevented Plaintiff's newly filed claims from moving forward" in the EEO process. Am.

Compl. ¶ 156. Finally, Mr. Richardson alleges that Mr. Chadwick presented a "fabricated" EEO

form to Mr. Richardson's EEO investigator, thus undermining Mr. Richardson's EEO charge.

*Id.* ¶ 162. He alleges that the failure to "conduct EEO counseling . . . and a limited inquiry into

Plaintiff's new claims of discrimination" constituted a violation of Mr. Richardson's due process

and free speech rights. *Id.* ¶ 157.

      Defendants acknowledge that Count Eleven is neither time-barred under the

applicable *Bivens* statute of limitations, nor *res judicata*. *See* Mot. at 5-6, 16. Instead, they

argue that the Court should dismiss Count Eleven for failure to state a claim upon which relief

may be granted, on the grounds that Mr. Smith is protected by qualified immunity because no

constitutional violations occurred, much less any "clearly established" violation of Mr.

Richardson's constitutional rights. *Id.* at 20.

Government officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006). A right is "clearly established" when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). In assessing an allegation of a constitutional violation against a government official, courts may first address either whether the defendant is entitled to qualified immunity or the merits of the constitutional claim itself. *See Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009) ("The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Defendants argue that Mr. Smith did not violate any clearly established right of Mr. Richardson's. Rather, they contend, Mr. Smith was following EEO regulations when he determined that Mr. Richardson's claim should be denied and, moreover, that failure properly to process an EEO complaint cannot amount to a constitutional violation. *See* Mot. at 30.[6] As to the first point, the Court agrees in part with Defendants. Mr. Richardson filed his new EEO claim via email to Mr. Smith on December 4, 2016. *See* 2017 Letter at 1 (describing Mr. Richardson's emailed claim). Approximately 2 months later, on February 2, 2017, Mr. Smith issued a letter to Mr. Richardson denying the claim. *Id.* In his letter, Mr. Smith cited EEO regulations that provide for the dismissal of an entire complaint under certain circumstances,

---

[6] As requested by Defendants, *see* Mot. at 30 n.7, the Court takes judicial notice of the 2017 Letter from Mr. Smith, which Mr. Richardson also referenced in his Amended Complaint. *See* Am. Compl. ¶¶ 156-58, 284-89.

including where the complainant has a pending EEO complaint raising the same issues, 29

C.F.R. § 1614.107(a)(1), or where there is a pending case in United States District Court raising

the same issues, provided that at least 180 days have passed since the filing of the administrative

complaint. 29 C.F.R. § 1614.107(a)(3). Mr. Smith's application of § 1614.107(a)(3), however,

appears to have been premature, because at the time of the denial less than 180 days had passed

since Mr. Richardson filed his December 4, 2016 complaint. *See* 29 C.F.R. § 1614.107(a)(3)

(permitting denial if the claim is pending or has been litigated in district court, but only if 180

days have passed since the administrative complaint was filed).

Regardless, accepting all of Mr. Richardson's allegations as true and construing

his claims liberally, *see* Fed. R. Civ. P. 8(a)(2), (f), Mr. Richardson has not plausibly alleged any

constitutional violation. As Defendants argue, other Judges in this Court have found that alleged

improper handling of an EEO complaint does not give rise to a constitutional violation.

Defendants cite a line of cases that stand for the proposition that a district court does not sit to

review the administrative handling of EEO complaints. *See, e.g.*, *Coulibaly v. Kerry*, 213 F.

Supp. 3d 93, 143 (D.D.C. 2016) ("[Plaintiff] request[s] that the Court review federal agencies'

handling of his discrimination allegations . . . . [T]he Court cannot do so—it may only review *de

novo* [Plaintiff's] Title VII claims which were the subject of the investigations with which he

alleges the agencies conspired to interfere."); *Koch v. White*, 967 F. Supp. 2d 326, 336 (D.D.C.

2013) (finding that a complainant may not sue the Equal Employment Opportunity Commission

for improper handling of a discrimination charge and dismissing similar allegations against

another agency); *see also Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997). If an employee

believes a claim has been mishandled he must first exhaust his administrative appeal remedies

and then proceed to a court for review of the substantive discrimination claim, not its

administrative processing.  *See Coulibaly*, 213 F. Supp. 3d at 143.  Mr. Richardson has already

pursued, in *Richardson I*, the discrimination claims at issue in the administrative complaint

denied by Mr. Smith.  He has alleged no new, separate violation that is reviewable by the Court

now.

   The allegations against Mr. Smith do not plausibly allege any constitutional

violation of a right that was "clearly established."  Mr. Smith is entitled to qualified immunity.

Count Eleven of Mr. Richardson's complaint does not state a claim upon which relief may be

granted and will be dismissed without prejudice.

**IV. CONCLUSION**

   For the reasons explained in this Memorandum Opinion, Counts One through Ten

of Mr. Richardson's Amended Complaint will be dismissed with prejudice, and Count Eleven

will be dismissed without prejudice.  A memorializing Order will accompany this Memorandum

Opinion.

Date: June 18, 2018           _____/s/_____

                ROSEMARY M. COLLYER
                United States District Judge